FUNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MICHON DESMOND HOUSTON, | Case No.: 18-10213 |
| Plaintiff, | Paul D. Borman<br>United States District Judge |
| v. | |
| BRANDON GUINN, | Stephanie Dawkins Davis<br>United States Magistrate Judge |
| Defendant.<br>_____/ | |

**REPORT AND RECOMMENDATION**
**DEFENDANT GUINN'S MOTION FOR SUMMARY JUDGMENT**
**(ECF No. 38)**

## I.   PROCEDURAL HISTORY

Plaintiff Michon Houston, acting *pro se*, filed this prisoner civil rights suit on January 19, 2018.  (ECF No. 1).  District Judge Paul D. Borman later referred all pretrial matters in this case to the undersigned.  (ECF No. 8).  After a period of discovery, defendant Guinn filed a motion for summary judgment.  (ECF No. 38).  The motion is fully briefed.  (ECF Nos. 41, 44).  Houston filed a sur-reply without leave of the Court.  (ECF No. 45).

## II.   FACTUAL BACKGROUND

Houston was housed at the Gus Harrison Correctional Facility ("ARF") and worked in food services there during the time relevant to his claim. Guinn was a corrections officer at ARF who worked in food services as a supervisor on Houston's shift. (ECF No. 1, PageID.2, ¶ 3, 4 – Verified Complaint; ECF No. 38-4, PageID.205, ¶ 2).[1]

While working in food services, Houston filed two grievances against Trinity Services Group[2] employee Jones. He filed the first one on August 26, 2017; it was about Jones' instructions to the inmate staff regarding the placement of garbage. (ECF No. 38, PageID.201). The grievance was received on August 28th. In this grievance Houston complained that Jones instructed kitchen inmate staff to pile the trash from that day's dinner in the hallway next to the dish tank and kosher room instead of in the designated area near the back dock. Houston was concerned that placing it as Jones had instructed caused a severe health and safety hazard. (*Id.*). On August 31, 2017, Houston wrote another grievance against Jones. This grievance was received at Step I on September 6, 2017. (ECF No. 38, PageID.203). In the second grievance Houston stated that Jones allowed

---

[1] A verified complaint is treated as an affidavit for purposes of responding to a motion for summary judgment. *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (citing *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (explaining that where a party files a verified complaint, the allegations contained therein "have the same force and effect as an affidavit for purposes of responding to a motion for summary judgment" (internal quotation marks omitted)).

[2] Trinity Services Group appears to be a third-party contract organization that provided food services and personnel to ARF.

corrections officer Young to take food prepared specifically for the diet line, which was impermissible. The first grievance was resolved on September 5th, and the second one was resolved on September 20th. Both grievances were resolved by Food Services Director Perry. (ECF No. 38-3, PageID.201, 203).

On September 17, 2017, Houston says Guinn approached him and made "distasteful and threatening comments" because he filed the two grievances against Jones. According to Houston, Guinn told him that he "made a big mistake by writing grievances about officers eating from the diet line" and that there was a target on his back. (ECF No. 1, PageID.3, ¶ 6-7, 9, Verified Complaint). Guinn told him he would not have the food services job for long because he liked "causing trouble" and that since he wrote two grievances in two weeks about the way the officers ran the chow hall, it showed that he did not want the job. (*Id.*). Houston wrote a grievance that day against Guinn, describing the conduct stated in the complaint. (ECF No. 1, PageID.4, ¶ 9). The grievance coordinator at ARF did not receive this grievance until September 29, 2017. (ECF No. 41, PageID.281).

Conversely, Guinn says he was not aware of the grievances Houston filed against Jones and that he never had any conversations with Houston on September 17, 2017, or on any date, regarding those grievances. (ECF No. 38, PageID.206, ¶ 4). He explains that food service grievances were submitted to the food service

director, who was an employee of Trinity Services Group. Hence, those grievances would not have come to his attention. (ECF No. 38, PageID.206, ¶ 4).

Both parties agree that on September 20, 2017, Guinn observed Houston take and eat a piece of cake from a covered baker's rack. The cake was not in the serving line ready to be served to the inmates, which was where inmate food service employees were allowed to get their food. Rather, it was in storage to be made available for future meals. (ECF No. 38, PageID.207, ¶ 6). After observing Houston eat the cake, Guinn wrote a Class II misconduct ticket against him for "Possession of stolen property; theft." (*Id.* at ¶ 7). Theft is defined in an MDOC Policy Directive to include "any unauthorized taking of property which belongs to another." In addition to the theft, Guinn says Houston violated other work rules when he went to the storage room to take a piece of cake. For example, he violated "work rule #8," which requires prisoners to remain in their assigned work area unless authorized by the food service supervisor or officer. (*Id.* at ¶ 8). Houston was assigned to work in the dish tank area and was not was not permitted to leave his work area and go to the storage area. (*Id.*). For these reasons, Guinn recommended that Houston be terminated from his food services job, and Guinn's supervisor concurred. (*Id.* at PageID.208, ¶ 9; ECF No. 38, PageID.232).

Guinn avers that "[t]heft of food, particularly among food service prisoners and from the chow hall, is a serious concern, and [he] would have recommended

4

that any prisoner who committed the violation . . . be terminated from his assignment regardless of whether that prisoner had filed grievances against [him] or other MDOC staff in the past." (ECF No. 38, PageID.208, ¶ 10). Guinn was interviewed on the grievance Houston submitted regarding his allegedly threatening comments sometime after September 29, 2017, the date the grievance coordinator received the grievance. (ECF No. 38, PageID.208-09, ¶ 11). Guinn stated that he fired Houston from the food service job because he took a piece of cake off a rack and ate in the kitchen area during his work detail. (ECF No. 38, PageID.234). Guinn also said that he did not make any comments to Houston about his filing grievances.

Houston insists that Guinn did know about the grievances he filed against Jones, and that is why Guinn fired him. He says that Jones and Guinn worked together in food services throughout the work week and he saw them eat and talk together during their shifts. (ECF No. 41, PageID.268). He also saw Guinn talk to corrections officer Young during his shift when Young would come in on work breaks. Houston surmises that Jones and/or Young told Guinn about the grievances before September 17th. (*Id.*).

Though Houston does not contest that he took the piece of cake and that it is against the rules for an inmate food services worker to leave his work station and take food that is not presented for the chow line (*see* ECF No. 38-5, PageID.239 –

5

Grievance about Houston's termination), he says Guinn selectively enforced the rule against him because he filed those grievances against Jones. Houston avers that Guinn allowed inmates to take extra food from different areas within food services, as long as they did not take the food out of the chow hall. (ECF No. 41, PageID.268-69, ¶ 8). Two other inmates affirm Houston's experience. Inmates Delvin Brown and Curtis Harris-Bey, both housed at ARF and working in food services there during the time relevant to this complaint, provided affidavits. Brown avers that it was a normal practice for inmates to get extra food in different areas of the kitchen, including the backer's rack. (ECF No. 41, PageID.283). He had done it himself and Guinn never wrote him a misconduct ticket for doing so. Brown says that Guinn told the inmate staff that he did not care what they ate so long as they did not leave the chow hall with food. (*Id.*). Harris-Bey swears that when Guinn started working in the food service area, he told the inmate staff that he did not care what they ate or from where they got their food, as long as it did not leave the chow hall. He says that Guinn saw him get food from other areas in the kitchen "numerous times" and he never wrote a misconduct ticket. It was a normal practice for inmate staff to get extra food, including from the bakers' area. (ECF No. 41, PageID.284).

As stated above, Houston submitted a grievance against Guinn for the comments Guinn made to him. However, Houston agrees that Guinn likely did not

6

know of that grievance before Guinn fired him because the grievance was not yet "out of the grievance coordinator's hands." (ECF No. 38, PageID.199).

## III. ANALYSIS AND RECOMMENDATION

### A. Standard of Review

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record...; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F.Supp.2d 905, 910 (6th Cir. 2004). In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

The Court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id*. at 254. Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of

the evidence, on a motion for summary judgment the Court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252-53. Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. The Court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id*. at 327.

    B.    Discussion

        1.    Retaliation – *Prima Facie* Case

Retaliation, although not expressly referred to in the Constitution, is actionable based on the premise that retaliatory actions may tend to chill an individual's exercise of First Amendment rights. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). To state a *prima facie* case for retaliation prohibited by the First Amendment, Houston must establish the following: 1) he engaged in protected conduct, 2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct, and 3) that a causal

9

connection exists between the first two elements. *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Guinn argues only that Houston cannot satisfy the causal connection element of his *prima facie* case. (ECF No. 38, PageID.179, 180-83). Therefore, the Court's analysis examines this element alone. Guinn says that Houston has not proved that he, Guinn, had a retaliatory motive for firing him because he did not know about the two grievances against Jones.[3] Those grievances were submitted to the food service director and would not have come to his attention. (*Id.* at PageID.182; ECF No. 38-4, PageID.206). Neither of the responses to the grievances indicate that MDOC staff or Jones would be notified of the grievance/response. And, the second grievance did not receive a response until September 20, three days after Houston was terminated. (ECF No. 44, PageID.301; ECF No. 38-3, PageID.203). Consequently, says Guinn, it would be impossible for him to have known about the grievances, and therefore, he could not have been motivated by the grievances to fire Houston.

---

[3] Guinn also argues that he did not and could not have known about Houston's grievance against him about the alleged conversation threatening to fire him because he filed grievances against Jones. (ECF No. 38, PageID.181). Houston concedes, however, that Guinn would not have known about that grievance when Guinn fired him on September 17th, since that grievance did not get "out of the grievance coordinator's hands" until after he was fired. Houston is clear that his retaliation claim is based on the two grievances he filed against Jones. (ECF No. 38-1, PageID.199).

10

In the view of the undersigned, there is a genuine issue of material fact on causation. Houston does not have evidence of how Guinn came to learn of the two grievances. Guinn suggests that he could not have known about the grievances because neither of the responses to the grievances indicated that MDOC staff would be notified and he suggests that no one would know about a grievance before a response to the grievance has issued. But, Houston says, in his verified complaint, that Guinn confronted him about the two grievances he filed against Jones. It is axiomatic that Guinn would have to have known of the grievances in order to have confronted Houston about them. While Guinn has proffered evidence to support his claim that he did not know about the two grievances against Jones, this evidence does not foreclose the possibility that he may have learned of the grievances from Jones or another Trinity employee as Houston has suggested. Indeed, the proffered evidence simply demonstrates that the formal grievance process did not include any notification to Houston. Thus, this evidence must be weighed against Houston's sworn statement that Guinn mentioned the two grievances in the context of threatening Houston's kitchen job. Hence, it is Guinn's word against Houston's word as to whether this confrontation happened. This Court does not make credibility determinations or decide whom to believe when there are conflicting stories, both equally believable. *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 515 (6th Cir. 2019). Such determinations are

reserved for the jury. If the jury were to credit Houston's version of events, then the jury reasonably could conclude that Guinn had a retaliatory motive for firing Houston. If the jury were to credit Guinn's story, then it reasonably could conclude that there was no retaliatory motive, and the claim would fail. Notwithstanding Guinn's proffer of evidence to support his version of events, in view of the parties' conflicting sworn statements in this matter, there remains a genuine dispute of material fact on the third element of Houston's retaliation claim.

    2.  Retaliation – Burden Shifting

Under the third element of a retaliation claim, "the subjective motivation of the defendants is at issue." *Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). "The analysis of motive in retaliation claims is well-developed"—"[o]nce the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant." *Id*. (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)). A defendant must make this showing by a preponderance of the evidence. *King v. Zamiara*, 680 F.3d 686, 709 (6th Cir. 2012).

As discussed above, there is a question of fact whether Houston's grievances were a motivating factor behind Guinn's firing Houston. Guinn maintains that the retaliation claim fails (if not for want of satisfaction of the causal connection

12

element) because he would have terminated Houston absent any protected activity. (ECF No. 38, PageID.183). He notes the "serious concern regarding theft in the chow hall," and explains that theft presents a serious custody and security concern. (*Id.* at PageID.184). And, Guinn points out that "other higher ranking MDOC employees approved" of his actions. (*Id.*). Moreover, Houston does not contest that taking and eating the cake from the storage area was against the rules. (ECF No. 38-5, PageID.239). Thus, he says he has demonstrated that he would have terminated Houston regardless of any protected conduct because he took food from somewhere other than the serving line.

Although it seems clear that Houston violated a prion rule against taking food from a storage area,[4] Houston says this is a case of selective enforcement of the rule that calls into question Guinn's motive for firing him. Houston and two other prisoners who worked in the food services department at ARF all say that Guinn told the inmate food service staff that they could take food from anywhere in the kitchen, which they said included the baker's rack. Prisoner Harris-Bey said that Guinn saw him take food from somewhere other than the service line and never wrote a misconduct ticket against him. (ECF No. 41, PageID.283). In short, Guinn allowed the prisoner employees to take food from the storage area without

---

[4] Neither party contests that such a rule exists, they have not presented evidence of an official rule.

discipline, except for Houston on this one occasion shortly after he filed two grievances against Jones and was confronted by Guinn.

In a case with somewhat similar facts, at least one other court has held that a corrections officer's selective enforcement of a rule called into question whether he would have taken the same contested action absent protected activity. In *Solman v. Manzi*, 2012 WL 1057303 (D. Conn. Mar. 28, 2012), the corrections officer, Manzi, wrote two separate misconduct tickets against inmate Solman on two different occasions. Solman contested both tickets. The first ticket was dismissed and after the second ticket he was told not to antagonize Manzi, but it appears no further action was taken. *Id.* at *2. Eight days after the second ticket, Manzi had Solman fired from his prison shop job. As the court explained, Solman's work supervisor allowed inmates to purchase items at the commissary and store them at the shop, but insisted that the workers give all their requests to one person who would buy everyone's items. On October 2nd, Solman and other inmates gave a fellow inmate lists of items they wanted from the commissary. However, prison rules prohibited inmates from buying commissary items for one another. Manzi saw the inmate walk to the commissary with a handful of lists. He asked to see them and pulled out only Solman's list from the pile. Manzi then issued Solman a third disciplinary ticket for violating prison rules. This ticket was dismissed, but Solman still lost his job as a result.

14

There are some factual differences between *Solman* and this case. In *Solman*, a different supervisor <u>directed</u> inmates to give their commissary lists to one inmate, which constituted a rule violation. Here, Houston does not allege that Guinn or other staff affirmatively directed the inmate staff to take food from storage. Houston and two other prisoners say that Guinn told them he did not care if they did and never punished them for taking food from storage. And, in *Solman*, the plaintiff alleged that Manzi was retaliating against him because of the resolution of the two misconducts Manzi wrote against him. Obviously, Manzi was directly involved with the prior conduct that allegedly formed the retaliatory motive. In this case, Guinn was not even named in the two grievances that are alleged to have created retaliatory motive, and thus Guinn was not directly implicated in the two grievances.

These factual differences, however, do not detract from the alleged selective enforcement of prison rules. Though not precedential, *Solman's* rationale is nevertheless instructive here. What aligns the *Solman* case with this case is that Solman brought forth evidence that, though he violated a prison rule, Manzi enforced this rule against him and not others. *Id.* at *4. Solman alleged that Manzi only pulled his list because of the result of the prior two misconducts. Manzi says Solman broke the rules and that he had a right to discipline him, no matter his decision regarding other inmates. The court determined that the parties'

15

conflicting stories created a genuine issue of material fact. If the jury believed Solman, then "Manzi selectively enforced prison rules, and his targeted discipline casts doubt on his assertion that he would have ticketed Solman even absent any retaliatory motive." Otherwise, Manzi thought only Solman violated the rule and punished him accordingly.

Likewise, here, Houston has presented evidence that shows that, absent his protected activity (filing grievances), Guinn would not have written a misconduct ticket for theft since Guinn did not punish other prisoners for doing the same thing he did: taking food from the storage area. Guinn insists that Houston broke prison rules and that is why Guinn terminated his job. This presents a genuine issue of material fact that should go to a jury. Like in *Solman*, if the jury believes Houston, then Guinn selectively enforced the prison rule, and his targeted discipline casts doubt on his assertion that he would have fired Houston absent protected activity, since he did not ticket any other prisoner for doing the same thing. If the jury believes Guinn, then Guinn did not selectively enforce the rule. Rather, Guinn thought Houston alone violated the rule and he issued a misconduct ticket accordingly, and not because of the prior grievances.

3. Qualified Immunity

Guinn argues that he is entitled to qualified immunity because Houston cannot demonstrate a causal connection between his termination and any protected

16

conduct. (ECF No. 38, PageID.185). The Supreme Court has established a two-part test in order to determine whether qualified immunity is applicable to a particular situation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The one part of the test involves a determination of whether the facts of the case, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." *Id*. If the first question was resolved in the affirmative, then the court would decide "whether the right was clearly established." *Id.* If both questions are resolved in the affirmative, then the doctrine of qualified immunity would not apply, and the case could proceed. Conversely, if the answer to either question is no, then qualified immunity obtains. The court may consider the questions in whichever order the court concludes makes the most sense. *Pearson v. Callahan*, 555 U.S. 223, 227 (2009). "When a defendant invokes qualified immunity in a motion for summary judgment, the plaintiff must offer sufficient evidence to create a genuine dispute of fact that the defendant violated a clearly established right." *Folks v. Petit*, 676 Fed. Appx. 567, 569 (6th Cir. 2017) (citing *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 608–09 (6th Cir. 2015)).

Here, as demonstrated above, there is a question of material fact whether Guinn violated Houston's First Amendment rights. *See Eckerman v. Tennessee Dep't of Safety*, 636 F.3d 202, 208 (6th Cir. 2010) ("The filing of a lawsuit to redress grievances is clearly protected activity under the First Amendment.")

17

(citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999)). Specifically, it is unresolved whether Guinn terminated Houston's job because Houston filed grievances, and whether Guinn would have fired Houston even absent any protected conduct. Consequently, Guinn is not entitled to qualified immunity at this juncture.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendant Guinn's motion for summary judgment (ECF No. 38) be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  October 31, 2019

s/Stephanie Dawkins Davis
Stephanie Dawkins Davis
United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on October 31, 2019, I electronically field the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and that I have mailed by United States Postal Service to the following non-ECF participant: Michon Desmond Houston #316461, Muskegon Correctional Facility, 2400 S. Sheridan, Muskegon, MI 49442.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov